McEaRland, J.,
delivered the opinion of the court:
"First. The objection to the antenuptial contract that it was not registered, is not valid. Ho question as to the registration was made in the pleadings. The original bill, *646 in fact, states the existence of the contract, and intimates no objection to its validity. The cross-bill sets it up and exhibits a copy. In all the pleadings and decrees it was treated as valid. Whether it was, in fact, registered or not, does not appear. But the postnuptial settlement, which was registered, refers to the antenuptial contract, and recognizes its validity, and sufficiently states its terms.
Second. Mrs. Trigg is entitled to $10,000, secured by the antenuptial contract, in preference to the claims of creditors. This right is not lost by failure to pray for it specially in her cross-bill. The facts were stated, and the appropriate relief should be granted. The contract was, in its nature, executory. It was an agreement upon the part of the intended husband to secure to' the wife, at his death, $10,000, in consideration of which, she agreed to release her right of dower and other rights under the law. It is well settled that marriage is, in the law, a legal consideration to support the rights thus purchased by the wife, and make them superior to the claims of creditors. If the widow is now bound, under this contract, to release her dower and other rights under the law, the executor representing those beneficially owning the estate, must perform the husband’s covenant, and pay the $10,000. The estate cannot have the benefit of her release without performing the conditions stipulated as the consideration. If the contract is now to be executed, it must be executed as to both parties.
The rights of Mrs. Trigg, under the antenuptial settlement, were not lost by accepting the postnuptial settlement, for the latter deed expressly recognizes her rights under the former. By the latter, the husband voluntarily settled other property upon Mrs. Trigg, which was expressed to be in lieu of dower and all other rights, except her rights to the $10,000 under the marriage contract.
The decree of the chancellor will be affirmed, and the cause remanded.
*647 I will endeavor to prepare and tile an opinion wlien I have leisure to do so with care.
We are asked to modify our decision so as to hold that, under the circumstances, Mrs. Trigg should be required to take dower in the funds under the control of the court, in the place of the $10,000 and interest, under the marriage settlement. This simply brings us back to the question whether the antenuptial contract is now to be executed. Are there reasons why a specific performance should be refused?
If the contract should be specifically executed, then there is no ground to restrict her rights under it to anything less than its terms demand. If it should not be executed, then her right to dower, etc., would remain unless lost by the postnuptial contract, or for some other reason. No objection was taken to the validity of the antenuptial contract upon any ground. On the contrary, the pleadings on both sides assume its validity. No reason was urged against a specific performance of its terms, and so the cause progressed. It was, perhaps, then thought that it would be to the interest of the devisees and creditors that Mrs. Trigg should be held bound by this contract. The estate was believed to be very valuable. Subsequent accumulation of debts, interest, and costs and expenses, and the immense depreciation in values has rendered the estate insolvent, and it is now discovered that if the widow’s claim is paid the creditors will get little or nothing. Hardships resulting from these untoward circumstances cannot change the legal rights of the parties. It is simply the misfortune of those upon whom the law casts the loss.
It is said that objection to the antenuptial contract might have been taken upon the ground of its, nonregistration, and this wras prevented by the failure of Mrs. Trigg to pray for priority over other creditors, and because the insolvency of the estate was unforeseen, and that the equity of the case *648 is that the objection should be allowed, and Mrs. Trigg be restricted to the dower interest in the fund.
Iiow the fact would have turned out had the issue been made as to the registration of the contract, we do not know. It is assumed that it was not registered because the copy exhibited shows no evidence of it, and the pleadings say nothing upon the subject, and such may be the fact. But the case must be determined upon the pleadings and issues made by the parties, as we have already said we do not think it was necessary for Mrs. Trigg to pray, specifically, that the amount due her should be paid in preference to the claims of creditors. The substance of the prayer of her bill was for the specific performance of the marriage contract. The legal result of this, we must take it, was well known to both parties.
As to whether it was to the interest of the estate to hold Mrs. Trigg bound by the contract, depended upon subsequent events, the appreciation or depreciation in the values of property, etc. As to all of this one party was as well informed as the other, and they chose to take their chances.
It is true courts of equity will not decree specific performance of an executory contract where there are reasons which make it inequitable to do so, but these reasons must be set out and relied upon by the parties resisting a performance. "Where both parties have, in their pleadings, acquiesced in a specific performance, and no reason is shown against it, the court cannot refuse, because by a change of values pending the litigation, it turns out to be a bad bargain to one of them. We held in a recent case at Knoxville, that a mere change in the value of property, by which the contract turned out to be a hard one on one of the parties, was no ground to refuse a specific performance. If the Contract was fair and reasonable at the time it was made, without fraud or undue influence or unconscionable advantage obtained by either, and no' change of condition or other circumstances rendering it inequitable, the *649 contract should be performed, notwithstanding it finally proves disastrous to one of the parties.
The only circumstance in this case is the depreciation in the values of the property pending the litigation, but we cannot, on this ground, decree against the position taken by the parties in their pleadings.
Again, upon the question of registration, if it was an issue in the cause, the registration of the postnuptial settlement, which refers to and fully recognizes the antenup-tial settlement, and substantially states its terms, we think, would be sufficient, although registered after the marriage. A marriage settlement is void as to creditors and purchasers without notice and without registration, but we do not understand that it is absolutely essential that it be registered before marriage. If it be- registered upon proper probate after marriage, we apprehend it will be good against all who have not acquired intervening rights.
The modification will be refused.